All rise. The score is now in session. Good morning. Please be seated. Ms. Clerk, call the next case, please. 311-734 Robert Follis v. Theresa McDevitt Follis Opposed by Claire Wilson v. Anne Schenck Appalied by John Croft Ms. Wilson Good morning. My name is Claire Wilson. I represent Robert Follis and Theresa McDevitt Follis. May it please the Court, my esteemed colleagues, Mr. and Mrs. Follis. This case has a background in a situation where two women, Ms. Follis and Ms. Schenck, decided to open a tax preparation business. The backdrop of this is that my client had no prior business experience whatsoever, nor did she have any prior tax preparation business. She relied on Anne's expertise as a tax preparer for many years and looked to Anne as a mentor. The Court found that my client, Theresa in particular, was guilty of fraud on several accounts. The first is that the Court found that my client improperly commingled, or actually not commingled, but used personal money out of the business account for personal use. It's true she did that. However, it's also important to understand that that business account was opened 100% from funds obtained from the Follis' home equity line of credit and that Ms. Schenck contributed zero, nothing, to that account. Was it poor corporate practice? Absolutely. But there was no demonstration of harm to Ms. Schenck, let alone fraud. Also raised as a commission of fraud was the fact that my client dissolved the business that the two ladies had opened. My client dissolved the business based upon the repeated urgings of her attorney. Now, one thing that's very important to understand is that Ms. Schenck was not on the corporation by her own design. She did not give Theresa any shares of her existing corporation. She abandoned the corporation after only two months in its infancy in the fall of the year when no tax preparation work was going on. And Ann was experienced with corporate procedures and could have easily put her name on, had she so chosen. Ann contributed nothing to this business. Another finding of fraud was that my client formed a competing business after the dissolution of the initial corporation that the two had formed. However, my client was just opening a new business after the dissolution of the first. It was a continuation of the same business under a different corporate name that Ann was not on. Initially, she was not on that business by her own design and by her own choice. In fact, Ann left to do business, to do tax preparation work for many of the same clients in a competing business. And she left after she had received more than the $75,000 purchase price for 50% of the business. And once she had that money in her pocket, she left. In fact, there were undocumented funds of cash that my client paid to Ms. Schenck that didn't even get entered in because of the fact that they were non-traceable funds. What is also very interesting is that Ms. Schenck denied that she had ever signed the bill of sale for Teresa's purchase of this business. And had she admitted, which my client claimed she had signed the bill of sale, but had she admitted that, the very document itself, the bill of sale, indicated that she would have been a co-owner of the business. She denied having actually entered into that bill of sale with Teresa Thales. Another assignment of fraud was the fact that my client assigned the lease in Ms. Schenck's former business to the new business without being an officer on Ms. Schenck's former business. Now my observation is, if Ann was actually going to enter into this new business enterprise with Teresa, Ann should have assigned it to the new business. Why didn't she do that? Ann entered into the business, into the enterprise, knowing they were to form a new corporation, and that is precisely why she didn't want to be on the new address in a moment. Ann never paid the rent to that landlord after Teresa and Robert were paying it at the time that the new corporation was filed. And how could she, in good conscience, go forward with a lease on a business to a former corporation that wasn't even leasing the premises anymore without assigning it? How could this be fraud on my client's part? There were several other issues of fraud that the court found my client committed. However, my argument is Ann did not consider herself an owner, did not want to be an owner, and took no actions to become one. She could have, with her business experience, easily amended the Articles of Incorporation. She said that she was not made a business partner or owner on. The standard of proof for fraud under these circumstances was clear and convincing evidence. The finding of fraud against my clients was against the manifest weight of the evidence and palpably erroneous. I pose this question. How could Teresa and Robert, to a lesser degree since he was not involved in the tax preparation business, how could they be guilty of fraud when they were the ones that gave all of the money to Ann Schenck and received little or no benefit in return? The next point I would like to address is the calculation of the damages by the lower court. I claim that it was completely erroneous and flawed. The court found that there was a loss of income over the several years of the operation of the corporation of $519,936, which included personal expenses that my clients paid out of this business account that Ann contributed nothing to. According to Ann's calculations, which the court accepted over the expert witness calculations, the income derived over those several years was $302,000, out of which, according to Ann, $217,590 were expended in personal expenses by Ann and Robert. However, the judge in fixing the loss of income used the total ordinary income over those years, the $302,000 figure, and added to it the $217,590 to come up with the $519,936. This was absolutely wrong no matter which way you look at it. The personal expenses were paid out of that same $302,000 income. He took the $302,000 in income and on top of that added in addition another $217,590 to come up with his loss of income finding. It was also completely erroneous and unjust for the court to have only given my client credit for a 30% contribution to the value of the corporation. By Ann Shank's own testimony, Ann claimed that she had received $66,000 in payments from Teresa and Robert. That's 44% of the value of the corporation. The court found that the corporation, they considered it to be worth $150,000. Teresa was to pay for 50% of that, or $75,000. Ann acknowledged receiving $66,000. Mr. Filato, the expert, said he could trace $68,000 in payments to Ann from the Fallases. That would be 45.3% of the total value of the corporation. Yet, the Honorable Judge Rossi only found that my client contributed 30%. That completely skewed the damage award. Of course, we argue, and my client testified, she paid the $75,000 plus sum. Mr. Filato, the expert witness, who was not even mentioned by the court, said there were additional money that was not traceable because it was cash payments that my client claimed she made to Ann Shank. In addition, no compensation was figured into the judge's computations for my client, Teresa. Teresa worked, and she worked hard. She ended up cleaning up all of Ann's audits from Ann's previous business, or the majority of those audits, and she was entitled to reasonable compensation for her work and efforts. In addition, the court, as I indicated in my brief, failed to take into account the full amount of compensation Ann earned in a competing business. The court said my client was competing by opening a new company on the heels of the dissolution of the first one that I argue my client was entitled to dissolve. Yet, the judge did not find any fraud by Ann in doing competing tax work and even opening competing businesses in approximately the year 2007 and 2008. So I question again, not only did the judge make erroneous findings and abuse his discretion in the damage award, but in assigning punitive damages. How can there be an award of punitive damages against the people who paid all of the money, the $75,000 plus, or the $68,000 that the expert found, or even the $66,000 that Ann herself admitted receiving? How can that finding stand when my clients gave everything, received practically nothing in return? Well, as I alluded to earlier, this was a classic bait and switch on the part of Ann Schenck. She received the money, and she left after two months before the tax season even began. And I might add that that business account that my client was using for personal expenses, Ann also used it for personal expenses. And my client even made payments to Ann to the tune of $5,000, and Ann took those checks and cashed them when they were postdated or attempted to. So Ann got the benefit of all of this. My client spent thousands of dollars renovating the business premises, and Ann took the money and left before the tax season even began. What was Teresa left with? A huge debt on her own home equity loan, and Robert also. She was left with the liability of the lease. She was left with nothing from Ann except with the possible exception of the client base, but Ann also had that. She took that from the business, and she was left with the work of cleaning up Ann's audits. And then to add insult to injury, she attempted to evict Robert and Teresa. This is reminiscent of what she did with the previous lady, Pam Jones. She took Pam's money, it was Pam's business, Pam paid her, and because Pam was not on the lease, she was able to evict Pam because Pam wasn't on the lease, nor was her business. Ann was on that lease. This is very reminiscent of that situation. In this case, Teresa and the newly formed corporation was not on the lease. Thank you. So she was going down the very same road, except my client had the foresight to make that assignment of the lease with the landlord to the new business. My client's mistakes certainly, because of their inexperience, don't amount to fraud. The court made many errors in dissolving the corporation. The court failed to follow the procedures under the Business Corporation Act. He said in dissolving the corporation he was using this certain methodology. He awarded 70% of the corporation value to Ann Schenck. The rest was presumably left to my client. He failed to make any clarification of what she was supposed to do, and the most egregious error of all was slapping her with an injunction and not letting her go on and make her living in her usual and customary business. This was the most harmful part of all. When the judge had already dissolved the company, why shouldn't she have gone on? Why shouldn't she have been able to go on in tax business? Ann was awarded her share. Cumulatively, taking all of this into consideration, I am asking you to take the authority to correct these horrendous wrongs and this horrendous abuse. I ask for an outright reversal of the lower court's judgment, and I think, as I argued in my brief, if anything, the fraud was by Ann against Robert and Teresa. There should be a finding of fraud against Ann Schenck and an assessment of damage against Ann in favor of the fallacies for at least the $68,000 the expert was able to trace, plus costs, plus attorney's fees, and plus punitive damages against Ann. I thank you so much for your kind attention. Thank you, Ms. Wilson. You're welcome. And Mr. Krupa. May it please the Court, Justices, Ms. Wilson, my name is John Krupa. I represent Ann Schenck in this matter. First off, before you, counsel has presented to you a very nice story as to what's happened here. This court, however, is not the trier of fact. It's not the trial court. Its job is not to determine the credibility of the witness and the credibility of the evidence. Its job is to determine whether the trial court has, in fact, abused its discretion in the decision that it's made. And the decision, whether it was against the manifest way of the evidence, did substantial injustice to a party, was palpably erroneous, and no reasonable man would rule in the way that the trial court has ruled. So regarding my first issue on appeal, the first issue we have is regarding Robert and Teresa's claim that Ann committed fraud. We've alleged that this is the first time this has actually been raised on appeal. If you go to the trial court, and it's on the record on R640 through R644, there was an objection that occurred at the trial level, and Judge Rossi ended up looking at the amended complaint that was filed by Robert and Teresa in this case, and held that there was no fraud count within that complaint, and sustained the objection for bringing in evidence as it related to reputation of my client, Ann Schenck, at that time. The motion to vacate that was filed by Ms. Wilson in this case is the first time that the word fraud has actually been used by the Robert and Teresa in the case, and that was only going towards asking for a new trial, not even asking that there would be a finding against Ann for any type of committing of fraud. In the case that, obviously, we cited in Rishantan, our brief, a party does not raise the issue on the trial court level, cannot raise it for the first time on appeal. We feel that the first counts in Kathleen's brief as it relates to Ann committing a fraud against files squarely falls underneath there. The next area we come to is where we allege our 341 violations, and that, I think, is really where the heart of this case comes from, is counsel has provided to you a very nice story of what's happened. However, there's big gaps of what's there. If you look at their brief, every single one of their issues of their brief sets forth what they claim is factual allegations that the trial court did not accept and did not follow in their case, and therefore, they should be entitled to be successful and have the trial court overturned. However, they don't provide to you the full record to be able to make that decision. We allege that right in our statement of facts ourselves, the first thing that we set forth is that they specifically leave out a vast number of exhibits that were there. We had 34 different exhibits that were there. There are 21 of our 34 exhibits that counsel has, in their own motion, has admitted they have possession of and had possession of since the completion of the trial. They did not attach to this trial court's record, and those exhibits go directly to the heart of every single one of the issues that they've claimed on there. You have exhibit number three, which is R471, the Secretary of State documents regarding the formation of the corporations. You have R366, which is the demand letter that went from Anne Schenck from our offices over to Robert and Teresa. You have exhibit nine, which is the citizen's account signature card listing Robert and Teresa as owners of the business. You have exhibit 10, R471, which is the bank statement showing the money going in and out of these various corporations. You also have exhibit 12, 13, and 14, where 2007, 2008, 2009 bank statements from a new bank account that they opened up, again showing where all the money went, which is R108, 109, and 110. You have a letter from Teresa Follis to clients of the business making derogatory statements regarding Anne, which is R154. You have the IRS Form 253, which is R485, showing that Anne is not an owner of any business. You have the 2007, 2008, 2009 income tax returns from the businesses, R475, R479, which show deductions that were taken from home equity loans and the like. These are all exhibits that are extremely relevant to the issues that Robert and Teresa have raised on their appeal. And because they didn't provide that information to you, which under 341H says they have to do, they have to provide a complete record of all relevant items that need to be heard by this court. Plus, they also have to provide a complete statement of facts as it relates to a standard of review of what's there. They haven't done those items. And without that, it gets to the level that this court doesn't have the ability to make an accurate review of what happened by Jared Rossi. And it goes to a case which was not cited in our brief, but it's an Illinois Supreme Court case, FOUCH, F-O-U-C-H, versus O'Brien's, which is 99-ill-seconds-389 from 1984. And it says an appellant has the burden to present a sufficient... Mr. Krupa. Excuse me. Mr. Krupa, normally we do not allow citation of cases that haven't been previously cited in the briefs to be cited in a normal argument. So I must ask, Ms. Wilson, do you have any objection to citation here? Otherwise, we can do it as a supplement for you to file with us and for you to respond to. Do you have any... I have a chance to review that case. You have not? I have not. Okay. Why don't we do it that way? If you want to cite that in a supplemental letter pleading, feel free within seven days. Sure, I can do that, Judge. And then, Ms. Wilson, you'll have seven days to respond. Yes, Judge. And this arose because the request for the oral argument is that we sort of kind of tried to put on the black robe, so to speak, to say what would be interesting to you as justices. And that's where it sort of came up from. No, that's fine. And it's not an uncommon thing. Don't worry about it. Judge, can I make reference to the case without the citation? No, why don't you just do that in your supplemental material? And so then, as it relates to the 341 argument, is that because of the fact that it would not provide the information to you, is that the presumption exists that the trial court has made the correct factual and legal decision in this case, that it followed the rules, that it followed the laws, that it did the correct thing when it made its decision. And by not providing you the full record that's there, is that it prevents this court from trying to determine what the trial court actually had in front of it when it made its credibility determinations. What did the bank statement say when the court used them to determine what the damages were? What was on the tax returns when the court used those to determine whether there were proper deductions or the like, depending upon what the Robert and Teresa's testimony was? So because of that, because of not attaching those documents, the court has to sort of presume and sort of accept that the trial court made the correct decision because it doesn't have the record in front of you as it relates to determine that, yes, the trial court did make an incorrect decision because of this other item. So as it relates to our second issue that we've put in our brief, we feel that the improper attachment of the full complete record, including the 21 of the 34 exhibits that were missed... Is that in the record now? Excuse me? Is that in the record now? The 21 exhibits? No, it is not, Judge. Because we don't have possession of those exhibits. Basically, they've been in possession of Robert and Teresa since the completion of the trial. So as it relates to that argument regarding 341, even though 341 objections and 341 sanctions are skeptically done and very rarely used, in this particular situation, we feel that the failure to do this creates the presumption in the trial court that the trial court was right. And as much as the story that counsel has put before you today, that story cannot challenge the trial court because they haven't provided you the full record to be able to see whether that challenge would be accurate or not. Then we get into the remaining issues that we have alleged in our brief. And they all sort of turn on the same sets of cases. They all turn on the same issues, which is the abuse of discretion standard. And we've cited numerous cases in there. Christmas v. Hubert, Paul v. Gerald Adamin, O'Brien v. Meyer, Henry Merritt of Lee, Schwartz v. Cordelonis, Kerr v. Erickson, Malui v. Allers, Zykovich v. Spaulding, Eshleman v. Verwaal. And pretty much, again, they hold that the abuse of discretion is the most deferential standard. Abuse of discretion review by the trial court is not rubber stamping, but this appellate court must look and make sure the correct standard of review or standard of law was used in this case. That abuse of discretion occurs when a decision is against the manifest weight of the evidence and the trial court decision is palpably erroneous or manifestly unjust. The appellate court does not substitute its discretion for the trial court, or even whether it agrees with the trial court, but the trial court exercises discretion and act arbitrarily without conscientious judgment or review of all the circumstances in the case, exceed the bounds of reason, ignore principles of law and justice. Law can cause substantial injustice. And in this particular case, when you go back and you look at Judge Rossi's memorandum of law, his decision, he set forth in the first 11 pages, 11 pages worth of information that he relied upon in making his decision. He set forth witness evidence that he relied upon. He set forth factual information he relied upon. And then he also made, on page 11, he made about a dozen specific findings of wrongful acts that the fallacies were engaged in. Now, counsel today, before you, again, has told you a story. But, again, that's not really what this court is for. You're not the trier of fact. You don't determine the credibility of the witnesses. That's the trial court's determination to make that determination. Counsel has to present to you the specific ways that the trial court abused its discretion in making its decision. And they have not done that. They have just said, in effect, if you boil everything down that they've alleged in their brief, in effect what they're saying to this court is that the trial court didn't believe Robin and Teresa and, in fact, believed Anne. That's, in effect, what they're saying. But they don't give you any justification as to why Judge Rossi's belief in that way is actually wrong. And that's what they have to do with the abuse of discretion standard. They have to specifically set that out. They have to specifically, you know, set forth how it's wrong and why it's wrong. And they have not done that. As it relates to the issue of the incorrect calculation of damages, it's interesting that Robert and Teresa, through Ms. Wilson, bring up the issue of Mr. Filato. And during the course of the underlying trial in this case, and it's set forth in Judge Rossi's memorandum of law, there were sanctions entered against Robert and Teresa Files. And it's interesting to note that they're not actually challenging that ruling today. And part of the sanctions attorneys fees were awarded, and that was for discovery violations, for them not turning over documents that they were required to turn over in the course of the trial. And that arose because the receiver, who was actually not Ann's witness, by the way, and it actually says that also in the memorandum, it was the court's witness. It was a court-appointed receiver by the court. So it was not Ann's expert witness in any way, shape, or form. Thank you. And in Mr. Filato's report, which is also attached to the part of the record on page 7 of the report, it says specifically in the third paragraph down, this is the court-appointed receiver saying this, as you can see on exhibits 3, 4, and 5, I attempted to recalculate such financial results, but I cannot express any opinion as to the validity or the correctness of the end result. And the reason why is because the Files has never provided them the documentation to complete the report. So the report is speculation. He himself cannot even say that this is an accurate report for the calculation of damages. And now they stand before you and they say, oh, the court made a mistake by not relying upon Mr. Filato's report. Well, they created the self-fulfilling prophecy where the report was not valid because they failed to turn over that documentation, and they were actually sanctioned by the court for failing to turn over that documentation. Lastly, as it relates to the issue of the calculation of damages, counsel has provided to you not a single piece of case law as it relates to the issue of damages needing or required to be calculated by expert witnesses. In this particular situation, there's nothing that says that a party cannot come up with their own damage report or come up with their own calculation of damages. And in this instance, the court specifically asked the parties to come up with a damage report, which Ms. Schenck did. And she specifically spelled out exactly what methodology she used, which included the bank statements and the tax returns and the profit and loss statements, which were omitted from the trial court record by Robert and Teresa in this case. So again, how is this court supposed to review whether the damage report was correct if the appellants, Mr. Robert and Teresa, don't give you the documentation that was relied upon in the calculation of the damage report by Anne Schenck? So again, the presumption has to fall into the favor of the appellee and against the appellant in this particular case. Thank you. As it relates to the final issue on dissolution of corporation, we stand on our brief. Thank you. Very good. Thank you, Mr. Krupa. Thank you, Your Honor. And Ms. Wilson, any rebuttal? Yes, thank you. Your Honor, I agree with Mr. Krupa that we do not need an expert to determine that 30% of the value of the corporation of $150,000 is $45,000. Anne herself, forget about the expert witness, Mr. Filato, whether he had all the information he needed or not, he and herself said she got $66,000. There's something wrong here, and it doesn't have anything to do with the fact that my clients didn't turn over information. Is it true they didn't? I think it is. I was not their trial counsel, but from what I understand there were some gaps. However, as I've indicated, we're not shying from the fact that my clients made mistakes. I suspect a lot of what he was asking for they didn't have. They were novices in business and probably had no business being in business, but they found themselves in this very... Well, we can't assume they didn't have it. We can't assume they didn't have that information. The court sanctioned them, correct? I think that's true, Your Honor. That's not on appeal, the sanctions on the value. No, that's not on appeal. Counsel argues, spends a lot of time in his argument, stating that our brief was insufficient, that we did not follow the correct standard of review,  I would like to mention that that was fully briefed in my reply. The cases of Thomas, Merriman, Marriage of Corky, and Mumau, all of those cases say a brief can be stricken if the errors are so egregious as to preclude review. However, all of those cases, in all of those cases, the court did not strike the brief. The court said that there was enough in the record, and I apologize if I didn't put enough in regarding the standard of review. I'm not extremely experienced doing this, and now I know to do better next time. However, those cases said if there's enough there, if it's argued, if the facts sustain it, you don't have to... If there is a substantial injustice that would occur, that the court can go forward with the case. Mr. Krupa argues that we failed to admit exhibits, or failed to present the whole record. I'm wondering why Mr. Krupa didn't file a motion to admit exhibits in this case, if he felt those exhibits were so crucial for your review. And a lot of the reason we didn't request to admit all of those exhibits was because my clients admitted they did use the bank account for personal use. We can't refute that. And several other similar problems. So I don't know why the exhibits would help to bolster something my clients said that they did wrong, and they understand they're not supposed to do that now. The court relied on some of the exhibits, though. Yes, and I submitted the ones that I felt were relevant to the issues in the case, to the real issues that were in dispute, not the ones that were not in dispute. My client, Mr. Krupa, argues about the abuse of discretion. My client's position is the judge's horrendous math flaws, the rejection of the expert. This was all in the fact that Ann abandoned the business after getting the money, and the court not reviewing that evidence was a terrible abuse. It worked a terrible injustice for the Fallisses. They're still living through this as it is. Thank you. The court was silent on these issues. Absolutely silent. I could understand if the judge said, well, I don't find this testimony to be credible, or I am not considering it for this reason. He didn't say that. He didn't say that the expert was not credible. He was silent on the whole issue. And I do thank you again for your kind consideration of my arguments. Thank you, Ms. Wilson. Thank you both for your argument today. Again, a footnote, if you want to submit that supplemental case, do it very informally, a memorandum, even a letter, and within seven days, and Ms. Wilson, then you'll have seven days to respond. We will now take this case under advisement, pending any receipt of information from you, and we'll get back to you with a written disposition within a short day. We'll now take a short recess.